It sounds as if I should start with Appeal 20-1199, where I'm the appellant. May it please the Court, Christopher Burke, who are the appellant, the Moons. I think the Deputy Clerk said that it would cross appeals, but there are no cross appeals on these that are being heard today. So, on 20-1199, I start out by saying, easily, the Ninth Circuit case says that 362K is to make the debtors whole. In this case, after the motion for content was filed, in response to it, an adversary was filed by Rushmore, which sought to strike the motion for contempt. It stated it in the complaint. It was stated in oral argument. It was stated in the pleadings, the motion for summary judgment, motions to dismiss, and even the Court acknowledged that it was filed, if not directly, at least indirectly, in response to the motion for contempt. Thus, I sought attorney's fees. The response was, an adversary cannot violate the stay, and the Court had no jurisdiction. Those were the only oppositions. It is not that the adversary violated the stay. It's what the adversary tried to do that violated the stay. If the Court does not see this as a matter that falls under 362K, I can see creditors in the future, when there's a motion for contempt, to respond by filing a motion for contempt. I can see creditors in the future, when there's a motion for contempt, to respond by filing adversary proceedings and indirectly attack the motion for contempt. Therefore, I would ask the Court to reverse the decision by the Bankruptcy Court and remand it for the Court to consider attorney's fees, which should be mandatory if the Court reverses. So, Mr. Burke, the adversary proceeding had two components. One component was kind of an end-run attack on your first contempt motion, which is what you've discussed. And then the other component was their effort to say that the lien avoidance should be reversed, basically, because they had no notice. So there were two parts of it. So it seems like the argument you're making now really goes to fees related to the attack on the first contempt motion and raising defenses that should have been brought in the first defense motion, but weren't. Is that right? No, that's the way the Court sees it. You would like it parsed out, but I would argue that the motion to avoid lien that they were attacking is indirectly still an attack on the motion for contempt. Because if they could say, look, we received no notice, this lien wasn't avoided, therefore, we didn't violate the state. So I see it as part and parcel, and I also think they're inextricably intertwined. But it goes beyond that, doesn't it? Because it would not only defeat the motion for contempt, it also means they've still got a lien. Correct. And that creates all kinds of problems. Any other questions on this appeal? No. Thank you. I'll just briefly address 1195, the supplemental fee. That's where the moons are the appellees. Simply stated, the supplemental fee was just for reading the opposition and replying to the opposition. There shouldn't be a delineation between the stay and the discharge to determine the attorney's fees on the supplemental fee app. It was just simply reviewing the opposition and preparing the reply. So that dichotomy of the stay and discharge shouldn't come into play, and I would ask that the court grant the fees in full on the supplemental fee app in 1195. So you don't think we should send this back to the bankruptcy court to consider it all together, all of the fees together? All of the fees in 1195? Well, related to the first contempt motion. Because we've already sent back our two other decisions have now gone back to the bankruptcy court. You're saying that this should not be sent back to be dealt with with those other things that we've already sent back. Right. It's a simple fee application. It was 3950, and I agreed to take 3500. But again, it was for two simple matters. It wasn't for are we fighting over the stay or the discharge. Honestly, I wondered why we had a whole appeal for $3500, honestly. I did, too. It cost you folks more than $3500 to file your appellate briefs and be here today on this. So this whole case is honestly a head scratcher for me. I'm not sure why you folks have not tried to settle this. Which doesn't require a response. Sounds like none was forthcoming anyway. So why don't you tell us about 1200, Mr. Burke? Okay. 1200 simply stated, I don't think the court considered the fact that it granted part of the motion. It granted the 5009D part of that motion. So fees were incurred in that motion. Second, it didn't consider that a suspended application refinance is just as devastating as a denial. You're in a holding pattern. And there were damages to the moons because they had to pay or continue to pay the higher interest and the higher loan amount. And so in two respects, there were damages, and the courts basically said, well, there's no damages here anyway. So I would ask that 1200 be reversed so the court can consider those damages. And I think what happened was the court forgot it did an interim order granting 5009D motion and just looked later on and said, okay, I'm not going to award anything for any continued stay or second motion for contempt. There were no damages here. And I think it overlooked that it had already granted part of the motion. And I don't think. But so the question is, so are you conceding then that notice was as of January 2019 and only damages flowing after that date are compensable? And you're saying that just the court made a mistake in not awarding those post-January 2019 damages? Is that what you're saying? Yes. All right. The basis would be what? Violation of the stay? Or violation of what's the violation that results in the damages? It can't be a stay violation, right? Because there's no stay as of January 2019. And so then what's the violation of the confirmation order? I'm just trying to figure it out. Yeah. Okay. Number one, and the court knows. I disagree that the stay ended when the court said it. But I respect what you said, Judge. I'm not trying to disrespect that. What I'm saying is they should have released the lien, and they never did. They had knowledge of the bankruptcy, and they should have released the lien earlier. And the fact that I went to court and the judge finally said, okay, release the lien, created damages because they were in contempt for not releasing it sooner. Because even if they say, well, we didn't know anything until January 2019, nothing was still done. Now they're going to say, well, we transferred it. Well, that doesn't get you off the hook. So what could they do? I mean, what would they do? They would then. Well, I guess the other question I had, which is maybe neither here nor there, is you already settled with the subsequent transfer. How come you didn't get the lien released at that time? Because you settled with whoever received the loan. And maybe I just spent too much time on appeals in this case because I know all these facts too well. But you settled with the subsequent servicer, but you didn't get a lien release. Right. That was a confidential settlement. And I, too, have spent considerable time on these appeals. So I feel your pain. But it was never released. I guess the simple answer is the Moons believed it was released or we thought it was released. And it was only when later on Ms. Moon went to refinance that it came up, hey, this isn't released. And so that's how that came about. And so I would ask that the court reverse 1,200 so the court can at least consider damages after it approved the 5009D motion and to consider that a suspended loan is as devastating as a denial of a loan. Are there any other questions? And I apologize, Judge Brand, for torturing you on this case. You know, it's fine. That's what they pay us the big bucks for. That's right. All right. Thank you. I'll reserve my remaining time. You have about four minutes left. Yes. Thank you. Thank you. Mr. Stern, would you like to reserve some time? You need to unmute your mic first. Yes. Go ahead. Thank you. No, Your Honor. I think I went to devote minimal time to the first appeal, the one where Rushmore is the appellant. So I don't think we need to reserve anything. Okay. I'd like to actually start, however, with the Moons' appeals. Starting with case 20-1199, I think the starting off point for this court's consideration is whether there was an automatic state of violence. I think the Moons sort of assumed that there was under this continuing violation theory, and we point out in our briefing that that was waived below. Let me clarify that what they discussed in the briefing and today this collateral attack was waived. That was not raised. What was raised below was a continuing violation theory. Addressing it on the merits, assuming the court considers the argument on its merits, the issue then becomes, was there a state of violence? And on the legal points here, what the Moons have said is that there was a continuing violation that post-dated the discharge. And, of course, the bankruptcy court found otherwise. And the cases that the Moons rely on to support this continuing violation theory simply do not apply in an argument no longer even good law. And the issue here, the point of demarcation is whether in filing the prohibited. And the answer to that is unequivocally no. And I think the Moons agree with that. That's why they resort to a continuing violation theory, which then has to, in order to succeed on that, they have to show that Rushmore did something subsequent to the stay being lifted that continued a violation that predated the lifting of the stay. Why didn't Rushmore simply file a timely response to the motion? Your Honor, we agree that that would have been better in terms of the case management before the bankruptcy court. But the implication of the filing of the adversary proceeding and the timely response to the motion is not correct. Rushmore certainly, after investigating the case, determined that it had been deprived of notice that there was a lien that had been stripped without an opportunity to be heard and filed an adversary proceeding to remedy that situation. Now, the Moons are correct that the complaint also makes reference to the other issues with respect to the contempt motion and repeat some of the offenses based on lack of notice. But the purpose of the adversary complaint was essentially to remedy that due process violation in which a property interest was stripped without notice. So... From the record, it looks to me like that was part of the purpose. But the other part of the purpose was to prevent getting defaulted, essentially, on the motion for contempt. Isn't that kind of a fair reading of what was going on? It's... I don't think so. Because there had been an initial response when the adversary complaint, excuse me, when the contempt motion was first filed. The response had promised a further response. And then there was, there were some issues in case handling which the bankruptcy court addressed and aren't before us today. But certainly, if the bankruptcy court had continued the hearing, the adversary would have had that effect. But I think coming back to whether these are compensable, the work that the Moons Council did in response to that is compensable, once again has to ask whether, even if the court assumes that it was all pretextual in order to obtain additional time for case management purposes, whether that would have been violated of the automatic stay. The... arguing that just the filing of the adversary was a violation of the stay. But I guess the way I was looking at it was, and tell me whether it's appropriate for me to do this or not, was that the Moons had the first contempt motion. And they prevailed, you know, at minimum on some violation of the stay with respect to Mrs. Gunnell's Moon. And, you know, what that final result of that is still open to question. But the Moon, Mrs. Moon, is entitled to, as part of her damages, attorney's fees for protecting her interests. And shouldn't we look at what you filed in the adversary proceeding as part and parcel of what she had to do in order to protect herself from the stay violation, hire her attorney to respond on, at minimum, the issues related to your effort to strike the first contempt motion? Isn't that, can't that be viewed, or should it be viewed as her damages related from the first contempt, you know, seeking to prevail on the first contempt motion since it's an attack on the first contempt motion? I think that is certainly the theory the Moons present today. Our first response to that is they did not present that in the bankruptcy court. But on the merits, Judge Brand, I think the part where we have an issue is that under the plain text of the bankruptcy 362K, there has to be a causal connection between a violation of the stay and the damage. And so in order for the Moons view to prevail, to be adopted as law here, our position would be that that would be an overly expansive interpretation of what a violation of the automatic stay and result in damages would be. We certainly understand that in order to prosecute a motion under 362K in order to be made whole and receive compensation, that's compensable. But what we have here is an adversary proceeding that under other case law is definitively not an automatic stay violation. And so I think part of the concern that you express in that question is what Mr. Burke referred to, the sort of the moral hazard, improper incentive that in every case a creditor defending an automatic stay could bring an adversary proceeding. But I think, Your Honor, what is unique about this case and makes that concern not an imminent concern is that here we did have a demonstrable due process violation. This was not simply a rehash of the defenses we were making to the adversary, excuse me, to the contempt motion. These were claims that could and did stand alone and the decision was made to make those claims. I think in that context, the cognitive dissonance with the Moons decision that I have is that you would have damages that could be accrued in favor of the debtor when the creditor has a valid claim that could be brought through an adversary proceeding. And we think that that's simply too much to ask 362K to accomplish in favor of the debtors. The other point I would make is that the debtors do have a strong tool to prevent this. And this brings us to the interplay between 362K, the substance of bankruptcy code provision, and Rule 41A, which gives a Rochmore or any other plaintiff an unequivocal, undeniable right to dismiss with prejudice and not incur costs or attorney's fees if that is done before an answer or a summary judgment motion is filed, which in the adversary proceeding was not done. So I think the court also has to consider whether adopting the Moons' view is going to interfere with the equally strong policy position or the policy behind Rule 41A, which allows a plaintiff to abandon litigation early enough in the process, which is what Rochmore elected to do here. So for all of those reasons, Judge, if the court considers the  there is a unique set of circumstances in this case where we actually had, although we abandoned it later, valid claims that they were not simply a mirror image of the defenses in the contempt motion. And finally, to illustrate that point, I think the panel should consider, as I think the bankruptcy court did, where the alleged damage comes from. It's not what the focus should not be what Rochmore did or didn't do or say or didn't say in the adversary proceeding, but what the Moons did in response to that, because we're determining whether there was any damage. And on that granular factual inquiry here, what you will find is that when the Moons responded to the adversary, they were responding to things such as whether it was procedurally appropriate to bring it. They were responding to it on the merits. There was very little in both the briefing and in the oral presentations of the bankruptcy court that focused on the adversary complaints request that the contempt motion be stricken. And so the defense that the Moons did provide did not respond or did not really correlate to the contempt issues, but rather to whether the lien should be stripped or reinstated. And if so, how should that be accomplished and what would happen to the plan and all of those issues? We never eventually got there because of the voluntary dismissal. But that's in the response, the motion to dismiss, that's where the focus on the Moons part was. And so I think that's something that on the merits here, the bankruptcy court certainly was within its discretion to find that there was nothing compensable, even if we make the assumption that the collateral attack theory actually has legs, which we again ask the court to reject for the reasons I've mentioned. I'm down to four and a half minutes, judges. If there's no other questions about this, I'd like to move to the next appeal, but I'm happy to take other questions. Go ahead. Thank you. So with respect to the case 20-1200, what we have here is another attempt, I think, to mix the concept of stay violation with a discharge injunction. And I think today the Moons conceded, as they did in their papers and the bankruptcy court, that there is no violation per se in having a lien. Maybe that wasn't conceded. Maybe that actually needs to be made clear. This was a prepetition lien. So there was no attempt on Rushmore's part to do anything that would have interfered with the debtor or the estate's property interest through the recordation or filing of the lien because it was already there. And the automatic stay certainly does not require the lien to be released. I think Mr. Burke conceded today that this is really a contempt issue. And that's a problem for the Moons because there is no notice. I think that was conceded as well today. And in order to have contempt damages under 105, you actually have to have actual notice, which the court, the bankruptcy court determined and this court has determined in previous appeals, was not satisfied. And so that's immediately an impediment for the Moons' recovery on that theory. The bankruptcy court is entitled to the abuse of discretion here on some of its factual findings, including that there was no damage. I think it's a tall order for the Moons to establish that there was a clear error of law or no relationship between the evidence and the factual conclusion the bankruptcy court reached. And so I think on that basis as well, that's an easy affirmance for this court. But again, the attempt on the Moons' part to fit this into a continuing violation simply doesn't work. Again, the Snowden case, which is the case they relied on the most in the papers, had to do with a check that was cashed. And while it postdated the discharge, arguably it did, the problem in that case was that the creditor in the case needed to actually return the check and didn't do it. And so something that violated the stay that needed to be remediated post-stay caused an ongoing violation. But that's not the case here. The bankruptcy court went into quite a bit of detail here about how to exercise any attempt to collect against any debtor property or anything of that nature. And so the contempt issue, I think, is the bankruptcy court just got it right. It cannot give, both on the law and on the facts, given its findings and the damages, it cannot give any relief to the Moons on that issue. And we finally point this out in our briefing, the whole idea is based on Snowden, which itself was based on Sternberg, which has been reversed. And so we think that even the legal foundation that the Moons propose is no longer good law. And so real briefly in my remaining minute on our appeal, we understand the court has gone through the attorney's fees issues and issued another ruling earlier this month on January 7th. Our legal position here is essentially a copy-paste of what we had said in the previous appeals. We respect the court's decisions on that. I just want to note that we don't agree with them for the purpose of preserving the issues should there be further appeals on those issues. But I have nothing to say in oral argument other than submitting those issues on the briefs. Okay. Thank you. Thank you. Any questions from the panel? No, thanks. Okay. Very good. Thank you, Mr. Stern. Mr. Burke, back to you. You've got, I think it was about, right, a little over four minutes. So please go ahead. Thank you. In terms of 1199, the Moons raised 362K. And it's, so the issue's there. You don't waive arguments, you waive issues. So the issue is there. And but for the motion for contempt, there would have been no adversary filed. In fact, just before the evidentiary hearing on the motion for contempt, Rushmore sought to continue it. And their attorney stated, as a reason, secondarily, we recently filed an adversary complaint in this, meaning the motion for contempt, in this action.  motion for sanctions. So they're admitting why they filed the adversary. Second, the court noted that this adversary gets filed that appears to address a fundamental matter on which the original sanctions motion was brought. And I think you picked up on it, Judge Farris. No real opposition was filed. An opposition saying we'll file an opposition in 45 days was filed, and no opposition was filed. This was their opposition indirectly. And it had to be addressed by the moons. Now, they're saying the motion to dismiss didn't deal with the state violation. Right. There were procedural problems with the complaint. So I sought to dismiss it on procedural grounds, such as attempts to set aside the discharge and the confirmation order years after the fact. So that doesn't mean that we ignored that the fundamental premise for this complaint was a collateral attack on the motion for contempt. So it had to be dealt with, but we dealt with it procedurally first. And then, ultimately, Rushmore dismissed the complaint. All of a sudden, it's gone. And it's, hey, no harm, no foul. You never filed an answer. Well, we never got that far. Of course, we're not going to dispute or debate that if they want to dismiss their complaint, because in looking out for the moon's best interest, it's not good to have that complaint hanging out there against them. So we didn't oppose the dismissal. Anyway, getting back to 1199, we would ask that that be reversed in the court in order to determine the amount of attorney's fees in defending against this complaint as a collateral attack under 362K. In terms of the 1200 motion, again, the same issues are here. And the court brought it up. In its decision on February 25, 2020, it said it didn't see any reason why the moons couldn't perhaps file another motion for contempt for failure to release the lien. That was done. And then the court even ordered it. But in doing its interim order, later on, the court did its final order. It focused on damages and said, well, there's no damages, no damages, even looking at the record from the evidentiary hearing. But the record from the evidentiary hearing did discuss that Ms. Moon suffered emotional distress along with her declaration because she said it was suspended. She was in a holding pattern. And so with a court to just say no damages were presented, no harm, no foul, I think the underlying reason, and again, this is just opinion, the court felt, well, I had done enough. It had done enough in the first motion for contempt. It wasn't going to award anything in the second motion for contempt. But in retrospect, I think the court erred in not awarding anything because attorney's fees at a minimum were incurred to make sure that that lien was released. If there are no questions, I'll just end my arguments. Any further questions for the panel? No. Okay. Thank you very much. This is an interesting case for us to work on. I want to echo what Judge Brand said. We'll handle any cases you bring to us. But from the client's perspective, both clients' perspective, it sure looks like this is one that ought to get resolved. But that's for you to do. We'll do what we're expected to do. Right. So the matter is submitted. I would just say thank you both for your excellent arguments today. Yes, I agree with that, too. Thank you. Thank you, Your Honor. Appreciate it. All right. That concludes our calendar. I want to thank Richard August for a very smooth virtual presentation and Ms. Sproul, of course, for your usual excellent work. Court is in recess.
judges: Farris, Lafferty, Brand